**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NEALY L. SKELDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 25-cv-06078 |
| v. | ) | |
| | ) | |
| DERMACARE USA CORPORATION, d/b/a | ) | |
| "DERMACONCEPTS," a Massachusetts | ) | |
| Corporation, ROBERT LEWIS TROW, an | ) | |
| individual; CAROL SIMRA TROW, an individual, | ) | Hon. Joan B. Gottschall |
| MICHAEL LUCICH, an individual; and | ) | Magistrate Judge Jeffrey T. Gilbert |
| BRITTANY PIKE, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DERMACARE USA CORP. d/b/a
DERMACONCEPTS' MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant DermaCare USA Corporation d/b/a/ DermaConcepts ("DermaConcepts") for its Motion to Dismiss Count V (Retaliatory Discharge in Violation of Illinois Public Policy (the "Retaliatory Discharge Claim")), Count VII (Civil Conspiracy (the "Civil Conspiracy Claim")), and Count VIII (Tortious Interference with Prospective Economic Advantage (the "Tortious Interference Claim"))[1] of Plaintiff's Complaint states as follows:

**FACTUAL BACKGROUND**

DermaConcepts is a skincare product distributor based in Massachusetts. (ECF Dkt. No. 1-2, ("Compl.") at ¶¶ 10, 21. Plaintiff was a Business Development Manager who signed an

---

[1] The Tortious Interference Claim is styled as being brought only against defendants Robert Trow, Carol Trow, Michael Lucich and Brittany Pike, although the language of the allegations makes it appear that it is also being brought against DermaConcepts. To the extent the Court considers the Tortious Interference Claim to be against DermaConcepts, DermaConcepts requests that the Court dismiss that claim against it for the reasons set forth herein.

employment agreement that included non-solicitation and non-competition provisions (the "Non-Solicitation and Non-Competition Agreement") with DermaConcepts on May 6, 2013. Compl. at Ex. 1. Robert Trow ("Robert Trow") and Carol Trow ("Carol Trow") are owners and executives of DermaConcepts; Robert Trow is the company's president. Compl. at ¶¶ 11-13. Michael Lucich ("Lucich") is the Controller of DermaConcepts. Compl. at ¶ 15. Brittany Pike ("Pike") is the Director of Sales Operations at DermaConcepts and was Plaintiff's direct supervisor. Compl. at ¶ 16. (Robert Trow, Carol Trow, Lucich and Pike are referred to as the "Individual Defendants" and they are referred to with DermaConcepts as "Defendants").

Plaintiff alleges that beginning in approximately 2022, DermaConcepts began to take retaliatory actions against her because she was referenced in the complaint in a discrimination lawsuit against it pending in the United States District Court for the Southern District of Florida (*Green v. DermaCare USA Corporation*, No. 22-cv-60117). Compl. at ¶¶ 41, 46-47. Plaintiff alleges that she sent DermaConcepts a written complaint regarding her treatment on March 20, 2025, and that she was "constructively discharge[d]" on March 31, 2025. Compl. at ¶¶ 5-6. Following Plaintiff's departure from DermaConcepts, her counsel and counsel for the company exchanged letters, which, in part, discussed each party's position on the enforceability of the Non-Solicitation and Non-Competition Agreement. *See* Compl. at ¶¶ 213-216, Exs. 5-8.

Shortly after the exchange of letters, Plaintiff brought this lawsuit against the Defendants alleging a variety of claims including breach of contract, violations of the Illinois Wage Payment and Collection Act, violations of the Illinois Right of Publicity Act, retaliatory discharge, intentional infliction of emotional distress, civil conspiracy, and tortious interference with prospective economic advantage.[2]  *See* Compl. at ¶¶ 312-430. Plaintiff also seeks an accounting

---

[2] Plaintiff filed this lawsuit in Illinois state court and the Defendants removed the case to this Court. ECF Dkt. No. 1.

regarding certain bonuses and commissions and declaratory judgment regarding the alleged unenforceability of the Non-Solicitation and Non-Competition Agreement she signed in 2013. *See* Compl. at ¶¶ 293-311, 431-441.

## LEGAL STANDARD

To state a well-pled claim, plaintiff must "state a claim to relief that is plausible on its face." *G & G Closed Cir. Events, LLC v. Castillo,* 327 F. Supp. 3d 1119, 1132 (N.D. Ill. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is only facially plausible where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Herrera v. Di Meo Brothers, Inc.*, 529 F. Supp. 3d 819, 826 (N.D. Ill. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Accordingly, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Id*. (internal citation and quotation omitted).

## ARGUMENT

The Retaliatory Discharge Claim should be dismissed because it is based on alleged violations of the Illinois Human Rights Act and because Plaintiff alleges she was constructively discharged. The Civil Conspiracy Claim should be dismissed because a civil conspiracy cannot exist between a company and its employees, or among its employees. The Tortious Interference Claim should be dismissed because the alleged interference was directed solely at the plaintiff (through her counsel) and the Defendants' actions were privileged.

I. **The Retaliatory Discharge Claim Should be Dismissed Because It is Premised on Alleged Violations of the Illinois Human Rights Act and Because the Complaint Alleges Plaintiff was Constructively Discharged.**

The Retaliatory Discharge Claim should be dismissed as to all Defendants for two independent reasons. First, the claim should be dismissed because the only "public policy" that the Defendants are alleged to have violated in connection with Plaintiff's alleged discharge is the Illinois Human Rights Act, which cannot support a retaliatory discharge claim. Second, the claim should be dismissed because a retaliatory discharge claim is not viable where an individual, such as Plaintiff, alleges that they were constructively (as opposed to actually) discharged.

A. Alleged Violations of the Illinois Human Rights Act Cannot Support a Retaliatory Discharge Claim as a Matter of Law.

To prove the Retaliatory Discharge Claim, Plaintiff must show that she was "(1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Blount v. Stroud*, 232 Ill. 2d 302, 904 N.E.2d 1, 9 (2009) (citations omitted). The tort of retaliatory discharge has been "narrowly construed in Illinois" and the Illinois Supreme Court "has consistently sought to restrict" it. *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 628–29 (7th Cir. 2009) (citations omitted). "Illinois courts have not extended this tort to situations where a plaintiff alleges that the public policy violated is the policy contained in the Illinois Human Rights Act." *Blount*, 904 N.E.2d at 9. This is so because Illinois courts only "acknowledge[ ] the need to recognize the tort of retaliatory discharge when there is no other remedy available to vindicate the public policy involved," and the Illinois Human Right Act is precisely such a remedy for discrimination and retaliation. *Stoecklein v. Ill. Tool Works, Inc.*, 589 F. Supp. 139, 145 (N.D. Ill. 1984).

Here, the Retaliatory Discharge Claim is entirely premised on alleged violations of the Illinois Human Rights Act, specifically the Act's prohibition on retaliation for opposing

discrimination. *See* 775 ILCS 5/6–101(A)(i). The Complaint makes this clear: "[Plaintiff] engaged in protected activity by complaining about discrimination and retaliation in her March 20, 2025 formal complaint. … Illinois public policy, as expressed in the Illinois Human Rights Act, prohibits retaliation against employees who oppose unlawful discrimination. … Defendants' actions violate Illinois public policy against retaliation for opposing discrimination." *Compl.* at ¶¶ 386-387, 397.

Because the Retaliatory Discharge Claim is premised solely on acts that are specifically prohibited by the Illinois Human Rights Act (*i.e.*, retaliation against an employee for her opposition to discrimination), the claim cannot be maintained as a matter of law and should be dismissed. *See Mein v. Masonite Corp.*, 109 Ill. 2d 1, 485 N.E.2d 312, 315 (1985) (affirming grant of motion to dismiss on retaliatory discharge claim where alleged violation of public policy was alleged violations of Illinois Human Rights Act); *Flaherty v. Gas Rsch. Inst.*, 31 F.3d 451, 459 (7th Cir. 1994) (stating "[r]etaliation resulting from opposition to age-based discrimination also is encompassed by the IHRA (see 775 ILCS 5/6–101(A)), and such a claim is therefore clearly within the scope of *Mein*" and affirming "finding that [plaintiff's] counsel violated Rule 11 when he reasserted the retaliatory discharge claim after having been apprised by opposing counsel of *Mein* and its progeny."); *Stoecklein*, 589 F. Supp. at 145 (dismissing claim for retaliatory discharge premised on alleged retaliation prohibited by Illinois Human Rights Act); *see also Hill v. St. James Hosp. & Health Centers*, No. 10 C 5780, 2013 WL 593954, at *7 (N.D. Ill. Feb. 15, 2013) ("Because the only public policy upon which [plaintiff] relies to substantiate her tort claim for retaliatory discharge is one that is expressly embodied in the Illinois Human Rights Act, her common law retaliatory discharge claim necessarily fails as a matter of law.").

B. The Retaliatory Discharge Claim Should Also Be Dismissed Because Plaintiff Claims She Was Constructively (Not Actually) Discharged.

The Retaliatory Discharge Claim should also be dismissed because Plaintiff alleges that she was constructively discharged, and not actually discharged from her employment. *See* Compl. at ¶¶ 6, 197-200. The Illinois Supreme Court has expressly declined to extend the tort of retaliatory discharge to encompass situations where the plaintiff is constructively discharged: "We further decline to expand the tort of retaliatory discharge, on these facts, to encompass the concept of 'constructive discharge.'" *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 601 N.E.2d 720, 730 (1992); *see also Rehfield v. Diocese of Joliet*, 2021 IL 125656, 182 N.E.3d 123, 132 (2021) (recognizing retaliatory discharge claim cannot be maintained on allegation of constructive discharge and affirming grant of motion to dismiss); *Magnuson v. Exelon Generation Co.*, LLC, No. 4:21-CV-04142-SLD-JEH, 2024 WL 4339593, at *29 (C.D. Ill. Sept. 27, 2024) (stating retaliatory discharge claim "requires 'actual discharge,' not constructive discharge" and finding such claim could not be maintained where plaintiff merely alleges constructive discharge).

For the foregoing reasons, the Retaliatory Discharge Claim should be dismissed against all Defendants.

## II. The Civil Conspiracy Claim Should Be Dismissed Because a Civil Conspiracy Cannot Exist Between a Company and its Employees, or Among its Employees.

Although civil conspiracy is not an independent cause of action in Illinois, to put forth this theory of liability "a plaintiff must allege an agreement or combination of two or more people or entities to do an unlawful act or to do a lawful act by unlawful means." *Small v. Sussman*, 306 Ill. App. 3d 639, 713 N.E.2d 1216, 1222 (1999) (internal quotation marks and citation omitted). A corporation, however, "can act only through its agents. Consequently, there can be no civil conspiracy between a corporation and its agents." *Id.* (internal citation omitted). In addition, "a

6

civil conspiracy cannot exist between a corporation's own officers or employees." *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 683 N.E.2d 985, 991 (1997).

In the Complaint, Plaintiff alleges that "Defendants [*i.e.*, DermaConcepts and its officers and employees] combined and agreed to accomplish an unlawful purpose and/or to accomplish a lawful purpose by unlawful means." Compl. at ¶ 410. Accordingly, Plaintiff's civil conspiracy theory is "legally impossible" and should be dismissed. *See Plastic Film Corp. of Am. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1146 (N.D. Ill. 2001) (granting motion to dismiss civil conspiracy allegation based on alleged conspiracy among employees of a corporation); *see also Small*, 306 Ill. App. 3d at 647 (affirming dismissal of civil conspiracy allegation based on alleged conspiracy between company and its employees/agents); *Digisound-WIE, Inc. v. Bestar Techs., Inc.*, No. 07 C 6535, 2008 WL 11517598, at *3 (N.D. Ill. Feb. 20, 2008) (dismissing civil conspiracy allegation based on alleged conspiracy between company and its employees).

### III. The Tortious Interference Claim Should Be Dismissed Because All of the Alleged Interference Was Directed at Plaintiff and Statements Defendants Made Concerning Plaintiff's Non-Solicitation and Non-Competition Agreement Were Privileged.

The Tortious Interference Claim should be dismissed because (1) all of the alleged interference by the Defendants was directed at Plaintiff (through her counsel) and not at any third party and (2) all of Defendants' actions were privileged.[3]

### A. None of the Alleged Interference Was Directed at a Third Party.

To state a claim for tortious interference with prospective economic advantage in Illinois, a plaintiff must plead: "1) the plaintiff's reasonable expectation of entering into a valid business relationship; 2) the defendant's knowledge of the plaintiff's expectancy; 3) purposeful interference

---

[3] As stated *supra* note 1, to the extent the Court considers the Tortious Interference Claim to be brought against DermaConcepts (in addition to the Individual Defendants), DermaConcepts respectfully requests that the Court also dismiss that claim against it.

by the defendant that prevents the plaintiff's legitimate expectancy from being fulfilled; and 4) damages to the plaintiff resulting from the defendant's interference." *Delloma v. Consolidation Coal Co*., 996 F.2d 168, 170–71 (7th Cir. 1993).

Here, the sole acts that Plaintiff that has alleged that constituted tortious interference with her "new employment relationship" was DermaConcepts' reminding her (through her counsel) of her obligations under the Non-Solicitation and Non-Competition Agreement through two letters from its counsel to her counsel (the "Counsel-to-Counsel Letters"). *See Compl.* at ¶¶ 424-425. (The Complaint does not contain any allegation that any of the Defendants communicated with Plaintiff's "new employer" (or any third party other than Plaintiff's counsel) regarding the Non-Solicitation and Non-Competition Agreement.) In an April 10, 2025 letter to Plaintiff's counsel, counsel for DermaConcepts explained:

> "Ms. Skeldon has certain post-employment obligations to DermaConcepts. The Non-Solicitation and Non-Competition Agreement (enclosed) describes certain obligations, including her obligation not to solicit or divert business from DermaConcepts clients. She also has obligations under the Employee Confidentiality Agreement (enclosed) to not use or disclose the confidential information of DermaConcepts. DermaConcepts expects her to comply with all of her obligations as set forth in these agreements, and to provide these agreements to any future prospective or current employer." *See Compl.* at Ex. 6.

And in a May 13, 2025 letter, counsel for DermaConcepts stated to Plaintiff's counsel:

> "You demanded [in your May 9, 2025 letter] that DermaConcepts 'formally acknowledge the unenforceability' of her non-compete agreement. DermaConcepts will not do so. The agreement that Ms. Skeldon signed is valid and enforceable. If Ms. Skeldon would like DermaConcepts to consider a modification or waiver to accommodate any current employment she may have, please provide information about her current employer, her job title, and her responsibilities, and please propose specific changes to the agreement." *See Compl.* at Ex. 8.

The Tortious Interference Claim should be dismissed for the simple reason that Plaintiff does not allege that any action constituting tortious interference was directed at any third party. In Illinois "it has been long held that the defendant's interference must be directed toward a third party." *Douglas Theater Corp. v. Chicago Title & Tr. Co*., 266 Ill. App. 3d 1037, 1047, 641 N.E.2d 584, 590 (1994); *see also George A. Fuller Co. v. Chi. Coll. of Osteopathic Med*., 719 F.2d 1326, 1331 (7th Cir. 1983) ("Under Illinois law, liability for tortious interference may only be premised on acts immediately directed at a third party").

Here, the only alleged acts of interference were the two Counsel-to-Counsel Letters, which were directed solely at Plaintiff, through her attorney. Such conduct directed to a plaintiff, including such counsel-to-counsel conduct, cannot sustain a tortious interference claim. *See Creation Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 692 (N.D. Ill. 2022) (dismissing claim for tortious interference where alleged interference was filing lawsuit against plaintiff).

Accordingly, the Tortious Interference claim should be dismissed because the Counsel-to-Counsel Letters were not directed at any third party.

### B. All of Defendants' Communications Were Privileged.

The Tortious Interference Claim should also be dismissed because the Defendants' actions were privileged. The tortious interference cause of action "implies a balancing of societal values: an individual has a general duty not to interfere with the business affairs of another, but he may be privileged to interfere, depending on his purpose and methods, when the interference takes a socially sanctioned form, such as lawful competition." *Miller v. Lockport Realty Grp., Inc*., 878 N.E.2d 171, 176 (Ill. App. 2007). "[C]ourts generally recognize more extensive privileges where the claim is merely for a loss of prospective advantage rather than an existing contract." *Delloma*, at 171. An act of interference is privileged "if the defendant acted in good faith to protect an interest or uphold a duty. Also the defendant's [interference] must be limited in scope to that

9

purpose, and must be made on a proper occasion, in a proper manner and to proper parties only." *Id.*

The Counsel-to-Counsel Letters regarding the Non-Solicitation and Non-Competition Agreement are privileged, and there are no allegations in the Complaint that any Defendant abused that privilege. Accordingly, the Tortious Interference Claim should be dismissed.

Courts applying Illinois law have found that "communications [made by defendants] to protect their contractual rights and intellectual property rights and interests, which they believed were being violated" are made to protect an interest and therefore privileged. *Act II Jewelry, LLC* v. *Wooten*, 318 F. Supp. 3d 1073, 1083-1084 (N.D. Ill. 2018). This reasoning also been extended to "statement[s] made to enforce a noncompetition agreement." *See Ellicson v. Oden Mach., Inc.*, No. 22-CV-02113, 2023 WL 4181227, at *3 (N.D. Ill. June 26, 2023). Here, as described in the Complaint, the Counsel-to-Counsel Letters were sent to preserve and protect DermaConcepts' contractual rights. *See Compl.* at ¶ 425 (Defendants "interfered with [Plaintiff's] relationship [with 'new employer'] by threatening to enforce" the Non-Solicitation and Non-Competition Agreement through the Counsel-to-Counsel Letters). Defendants' actions and statements to explain their position concerning the Non-Solicitation and Non-Competition Agreement were reasonable as the only allegations contained in the Complaint regarding Defendants' communications about that contract were in the Counsel-to-Counsel Letters. *See Compl.* at ¶ 208 ("Through counsel's letters dated April 10, 2025, and May 13, 2025, DERMACONCEPTS has asserted that the 2013 Non-Solicitation and Non-Competition Agreement is 'valid and enforceable.'"). These straightforward and measured letters—sent only to Plaintiff's attorney after Plaintiff had left DermaConcepts' employment—are precisely the type of communications that are "limited in scope to [protect DermaConcepts' interests]," and that were "made on a proper occasion, in a proper manner and to

proper parties only." *Delloma*, 996 F.2d at 171; *see also Disher v. Fulgoni*, 161 Ill.App.3d 1, 514 N.E.2d 767 (1987) (concluding former employer did not commit tortious interference with ex-employee's prospective economic advantage by sending letter to ex-employee's prospective employer advising it of ex-employee's confidentiality agreement); *Act II Jewelry LLC*, 318 F. Supp. 3d at 1083-1084 (finding defendants' sending of copies of "complaint and amended complaint, cease and desist/litigation hold letters, and subpoenas" to sales representatives of departed employee-plaintiff who set up business competitive to defendants was reasonable and thus privileged). The Defendants' actions were privileged.

"Once a privilege is established, the plaintiff must prove that the defendant acted with malice. The defendant may abuse the privilege, by making unjustified statements, by excessive publication of statements, or by making statements in conflict with the interest which gave rise to the privilege. If the defendant knew the statements were false, he would be unjustified in making them." *Delloma*, 996 F.2d at 172. "While generally abuse of privilege is a question of fact for the jury, if the pleadings and attached exhibits present no genuine issue of material fact, the defendant is entitled to a judgment as a matter of law." *Turner v. Fletcher*, 302 Ill.App.3d 1051, 706 N.E.2d 514, 518 (1999). Other than a conclusory allegation that the Defendants "threaten[ed] to enforce an unenforceable" contract, *see* Compl. at ¶ 425, the Complaint is silent regarding any "abuse" committed by Defendants of its privilege. *See id.* at 519 ("To establish an alleged interference was 'unjustified,' the plaintiff must do more than merely assert the defendant's conduct was unjustified. The plaintiff must set forth 'factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified.'"). Rather, the Complaint (and its attachments, including the Non-Solicitation and Non-Competition Agreement and the Counsel-to-Counsel Letters) show that the Defendants only made accurate statements about the Non-Solicitation and Non-Competition

Agreement directed only to Plaintiff's counsel, and with the goal of explaining DermaConcepts' position concerning the enforceability of the contract. The Defendants did not abuse their privilege by pointing out DermaConcepts' contractual rights. *See Turner*, 706 N.E.2d at 518 (concluding defendant did not abuse privilege where he made accurate statements and dismissing tortious interference claim at the Rule 12 stage); *see also Act II Jewelry LLC*, 318 F. Supp. 3d at 1085 (finding defendants did not abuse privilege where letters alleged to constitute interference were accurate and "directly related to [Defendants'] efforts to protect their legal interests").

## **CONCLUSION**

The Retaliatory Discharge Claim, the Civil Conspiracy Claim, and the Tortious Interference Claim should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Dated: June 20, 2025

Respectfully submitted,

DERMACARE USA CORPORATION, d/b/a/ DERMACONCEPTS

By: /s/ *Richard R. Winter*
       One of Its Attorneys

Richard R. Winter (#6195210)
William A. Ringhofer (#6339585)
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
richard.winter@hklaw.com
william.ringhofer@hklaw.com