IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEALY L. SKELDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 25-cv-06078 |
| v. | ) | |
| | ) | |
| DERMACARE USA CORPORATION, d/b/a "DERMACONCEPTS," a Massachusetts Corporation, ROBERT LEWIS TROW, an individual; CAROL SIMRA TROW, an individual; MICHAEL LUCICH, an individual; and BRITTANY PIKE, an individual, | ) ) ) ) ) ) ) | Hon. Joan B. Gottschall  Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

**INDIVIDUAL DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR COMBINED RULE 12(b)(2) and 12(b)(6) MOTION TO DISMISS**

Defendants Robert Trow ("Robert Trow"), Carol Trow ("Carol Trow"), Michael Lucich ("Lucich"), and Brittany Pike ("Pike") (together the "Individual Defendants") for their Memorandum in Support of their Combined Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. of Civ. P. 12(b)(2) and 12(b)(6) state as follows:

**INTRODUCTION**

Plaintiff Nealy L. Skeldon has filed this suit against her former employer, Massachusetts-based Defendant DermaCare USA Corporation d/b/a DermaConcepts ("DermaConcepts") and the Individual Defendants, all of whom either work for or own DermaConcepts. An objective reading of Plaintiff's Complaint reveals that the Individual Defendants' only connection to the State of Illinois is Plaintiff herself. Plaintiff does not allege any of the Individual Defendants ever worked in Illinois or directed any conduct towards Illinois. Plaintiff only asserts occasional interactions with any of the four Individual Defendants, the majority of which were initiated by Plaintiff via email and none of which physically occurred in Illinois. Under applicable Illinois law, Plaintiff's

Complaint contains no allegations sufficient to confer jurisdiction against any of the Individual Defendants.

Alternatively, the Complaint's allegations are facially insufficient to state a claim against the Individual Defendants for retaliatory discharge (Count V), civil conspiracy (Count VII), tortious interference (Count VIII), or intentional infliction of emotional distress ("IIED") (Count VI; directed only at Robert Trow). Counts V, VII and VIII—which are directed at DermaConcepts and the Individual Defendants—are the subject to DermaConcepts' Rule 12(b)(6) Motion To Dismiss, in which the Individual Defendants join. The insufficiency of Count VI—directed solely at Robert Trow—should be dismissed for the reasons discussed below.

## FACTUAL BACKGROUND

Plaintiff signed an employment agreement with DermaConcepts on May 6, 2013 to work as a regional account manager for the sales territory covering "Chicago to North Milwaukee; Milwaukee West to Madison, WI; Madison, WI back to the Chicago Western Suburbs and immediate environs of those areas." ECF Dkt. No. 1-2, ("Compl.") at Ex. 1. Plaintiff worked in this role for roughly 12 years before ending her employment on March 31, 2025. Compl. at ¶ 199.

Beyond that, the Complaint contains no discussion of any conduct in Illinois by any Individual Defendant. Instead, Plaintiff's Complaint details a series of alleged actions taken by DermaConcepts, not by any of the Individual Defendants, in unspecified locations. Plaintiff's theory underlying the allegations in the Complaint is that in 2022, DermaConcepts saw her name referenced in the complaint in a lawsuit pending in the United States District Court for the Southern District of Florida (*Green v. DermaCare USA Corporation*, No. 22-cv-60117 ("*Green*")), and decided to begin engaging in alleged retaliatory acts against her. Compl. at ¶¶ 41, 46-47.

2

What few allegations in Plaintiff's 441-paragraph Complaint focus on the Individual Defendants are primarily conclusory. Concerning Robert Trow (the chief executive officer and part-owner of DermaConcepts), Plaintiff alleges only that he gave her negative work feedback via email and other miscellaneous interactions via social media. Compl. at ¶¶ 11, 105-117, 125, 221, 265-268. With respect to Carol Trow (the president and part-owner of DermaConcepts), Plaintiff alleges only that Carol Trow signed Plaintiff's employment offer in 2013 (Compl. at ¶¶ 13, 25) and placed a single phone call to Plaintiff (Compl. at ¶¶ 143-144). Plaintiff's sole allegations concerning Lucich (the Controller of DermaConcepts) conclude that he "manipulat[ed] formulas" and responded to emails from Plaintiff after she raised her concerns related to certain calculations. Compl. at ¶¶ 14, 77-84. Finally, Plaintiff alleges two limited interactions with Pike (the Director of Sales Operations at DermaConcepts), who allegedly "communicated sales performance expectations" to Plaintiff (Compl. at ¶¶ 15, 119) and later informed Plaintiff that DermaConcepts had retained outside counsel (Compl. at ¶ 190). These allegations are insufficient to establish jurisdiction over any of the Individual Defendants, none of whom are residents of the State of Illinois.[1]

The simple fact is that Individual Defendants have no contacts with the State of Illinois relevant to Plaintiff's claims in this case. At the time of Plaintiff's departure from DermaConcepts, she was the only employee based in Illinois (DermaConcepts has subsequently hired an Illinois-based individual to fill the vacancy left by Plaintiff's departure). Declaration of Robert Trow ("R. Trow Decl."), attached hereto as **Exhibit 1**, at ¶¶ 7-8. None of the Individual Defendants own real estate or other property in Illinois, have ever lived in Illinois, or have ever been employed in Illinois

---

[1] For this reason, Plaintiff cannot establish that general personal jurisdiction exists as to any of the Individual Defendants. *See* ECF Dkt. No. 8 (jurisdictional disclosure stating that (1) Robert and Carol Trow are Florida residents; and (2) Michael Lucich and Brittany Pike are Massachusetts residents. Accordingly, Individual Defendants' jurisdictional arguments focus solely on specific personal jurisdiction.

or by an Illinois entity. R. Trow Decl. at ¶¶ 10-16; Declaration of Carol Trow ("C. Trow Decl."), attached hereto as **Exhibit 2**, at ¶¶ 8-14; Declaration of Michael Lucich ("Lucich Decl."), attached hereto as **Exhibit 3**, at ¶¶ 9-15; Declaration of Brittany Pike ("Pike Decl."), attached hereto as **Exhibit 4**, at ¶¶ 10-16.

The Individual Defendants lacked significant contacts with Illinois during the entirety of Plaintiff's tenure with DermaConcepts. Robert Trow met with the Plaintiff one time in Illinois roughly ten years ago, but has never been to Illinois since that meeting. R. Trow Decl. at ¶¶ 4-5. Pike traveled to Illinois for a trade show in 2014, flew in and out of Illinois for a partnership meeting on the same day in 2015, and later attended a separate one-day event, also in 2015. Pike Decl. at ¶¶ 5. Carol Trow and Lucich have never traveled to Illinois for DermaConcepts. C. Trow Decl. at ¶ 4; Lucich Decl. at ¶ 5. Since the time the *Green* lawsuit was settled in March 2022, which Plaintiff alleges coincided with the beginning of her alleged adverse treatment at DermaConcepts, none of the Individual Defendants have been to Illinois, let alone interacted with Plaintiff in Illinois. R. Trow Decl. at ¶¶ 5, 9; C. Trow Decl. at ¶¶ 4, 5; Lucich Decl. at ¶¶ 5, 6; Pike Decl. at ¶¶ 6, 7. Instead, Individual Defendants' only interactions with Plaintiff during this period were infrequent email and phone communications. R. Trow Decl. at ¶ 6; C. Trow Decl. at ¶ 6; Lucich Decl. at ¶ 7; Pike Decl. at ¶ 8. Although Rob and Carol Trow are the co-owners of DermaConcepts, neither Lucich nor Pike maintains any ownership interest in the entity. R. Trow Decl. at ¶ 2; C. Trow Decl. at ¶ 2; Lucich Decl. at ¶ 4; Pike Decl. at ¶ 4.

The Complaint's allegations relating to the Counts which are directed both to DermaConcepts and the Individual Defendants are discussed in DermaConcepts' Motion to Dismiss. And the allegations relating to the Count directed solely to Robert Trow are discussed below.

**LEGAL STANDARD**

A court sitting in diversity "has personal jurisdiction over the parties to the extent that an Illinois court could exercise such jurisdiction." *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 914 (N.D. Ill. 2017) (citation omitted). However, "Illinois extends personal jurisdiction to the limits allowed by the United States Constitution, so the state and federal standards are congruent." *Id*. (citation and quotation marks omitted). Under these standards, "[a] forum state's courts may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the defendant has 'certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Int'l Shoe Co. v. Wash., Office of Unemployment Compl. & Placement*, 326 U.S. 310, 316 (1945)) (internal citation and quotation omitted). Thus, a "defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be haled into court there." *Id.*; *see also Khan v. Qatar Airways Corporation*, 741 F. Supp. 3d 756, 761 (N.D. Ill. 2023) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (stating the purposeful availment requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person")).

The "[p]laintiff bears the burden of establishing that personal jurisdiction exists." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). Concerning specific personal jurisdiction over an individual, a "defendant's own allegedly tortious conduct must be directly connected to the forum state itself, and not just to the plaintiff who resides there." *Monco v. Zoltek*

*Corporation*, 342 F. Supp. 3d 829, 835 (N.D. Ill. 2018) (citing to *Walden v. Flore*, 571 U.S. 277, 287-88 (2014)).

On a motion to dismiss for failure to state a claim, a plaintiff must "state a claim to relief that is plausible on its face." *G & G Closed Cir. Events, LLC v. Castillo,* 327 F. Supp. 3d 1119, 1132 (N.D. Ill. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is only facially plausible where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Herrera v. Di Meo Brothers, Inc.*, 529 F. Supp. 3d 819, 826 (N.D. Ill. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Accordingly, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Id*. (internal citation and quotation omitted).

## ANALYSIS

**Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

**I. Plaintiff Pleads No Link Between the Individual Defendants' Conduct and Illinois.**

Plaintiff does not allege a single fact in the Complaint to suggest that Illinois has personal jurisdiction over any of the Individual Defendants. Instead, Plaintiff's theory of jurisdiction appears to be that because Plaintiff is an Illinois resident, *any* contacts with Plaintiff are sufficient to confer jurisdiction over the Individual Defendants.

That is not the law in Illinois or in this District. As the court in *Monco* stated, the "mere foreseeability of harm to plaintiffs who the defendant knows are based in Illinois is insufficient" to confer personal jurisdiction. 342 F. Supp. 3d at 834. In that case even where a defendant had "a 20-year working relationship with plaintiffs in Illinois, including frequent oral and written

communications directed to plaintiffs in Illinois," attention to such interactions wrongly "place[d] the focus on defendant's contacts with and effects on plaintiff, rather than defendant's necessary 'substantial connection' with Illinois itself." *Id*. (citing *Walden*, 571 U.S. at 284). The *Monco* court noted what the Supreme Court observed in *Walden*, "[t]he plaintiff cannot be the only link between the defendant and the forum." *Id*. at 835 (citing *Walden*, 571 U.S. at 285). Accordingly, "even conduct aimed at injuring plaintiff's forum-state business is insufficient where that conduct does not connect the defendant to the forum state itself." *Id*. at 836. Because the *Monco* plaintiffs' claim only alleged that the defendant "intentionally inflicted an injury on an Illinois-connected business relationship based on actions taken outside Illinois," there were no "suit-specific contacts by [the defendant] with Illinois itself," and plaintiffs failed to make their required *prima facie* showing of personal jurisdiction. *Id*.

The circumstances here are virtually identical to those in *Monco*. Plaintiff has not pled a single fact to demonstrate that any of the Individual Defendants ever set foot in Illinois, personally transacted any business in Illinois, or directed any conduct to Illinois. As in *Monco*, the only link between the Individual Defendants and the forum is the Plaintiff. Absent any conduct between the Individual Defendants and Illinois itself, Plaintiff cannot make a showing that personal jurisdiction exists here. *See also Rogers v. City of Hobart, Indiana*, 996 F.3d 812 (7th Cir. 2021) (affirming dismissal for lack of personal jurisdiction where "[a]ccording to the allegations in this case, the defendants simply did not undertake any affirmative action in Illinois, or any action purposefully designed to have an effect within Illinois"); *Clover Technologies Group, LLC v. Oxford Aviation, Inc.*, 993 F. Supp. 2d 872, 880 (N.D. Ill. 2013) (granting motion to dismiss where "[t]he uncontested facts in [the submitted] affidavits make very clear that [defendants] could not be fairly

regarded as at home in Illinois, as their contact with the state has been sporadic and isolated to individual transactions") (internal citation and quotation omitted).

Plaintiff also cannot establish jurisdiction via speculative future harm in Illinois. Plaintiff's Complaint does not contain a single allegation that any of the Individual Defendants knew or had any reason to know that Plaintiff accepted a position with a new employer. Nor does Plaintiff plead a single fact to establish how any of the Individual Defendants would know that her new, unspecified employer assigned her to a sales territory in the State of Illinois. Plaintiff has not alleged any basis for this Court to conclude that the Individual Defendants in any way targeted Illinois with any of their actions. For these reasons, Plaintiff's Complaint fails to establish any link between the Individual Defendants' conduct and the State of Illinois, which requires dismissal of all claims against the Individual Defendants.

### II. Plaintiff Cannot Establish Specific Personal Jurisdiction Via Sporadic Email and Phone Communications.

Plaintiff articulates only one basis for exercising jurisdiction over the Individual Defendants in her Complaint: a random assortment of emails and social media usage from the Individual Defendants and a single phone call from Carol Trow. As to any specific individual Defendant, Plaintiff pleads no more than a handful of emails or a single phone call. But attempting to rely on such allegations to establish jurisdiction over the Individual Defendants contradicts controlling Seventh Circuit case law. *Rossetti v. Saban*, Case No. 23-3221, 2025 WL 891509, *2 (7th Cir. Mar. 21, 2025) (stating that "the defendants' use of email to respond to [plaintiff] is, by itself, insufficient" to establish personal jurisdiction). As this Court has previously held, "a single phone call and voicemail for a forum resident is not sufficient to meet the minimum contacts requirement." *Rogers v. City of Hobart, Indiana*, 491 F. Supp. 3d 351, 357 (N.D. Ill. 2020); *see also Centurion Service Group, LLC v. SBMC Healthcare, LLC*, 944 F. Supp. 2d 617, 624 (N.D.

Ill. 2013) (dismissing complaint for lack of personal jurisdiction where "the only contacts possibly supporting jurisdiction" were "calls and emails . . . of an unspecified number").

Plaintiff cannot establish jurisdiction for any of the claims asserted against the Individual Defendants based on the *de minimis* electronic communications described in the Complaint. Plaintiff here fails to make any allegation as to her location when receiving or viewing any of the emails, social media posts, or phone calls alleged in the Complaint. And "[e]ven if these communications were sufficiently targeted to Illinois, they are too sparse to create personal jurisdiction[.]" *See United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1053 (N.D. Ill. 2015).

Further, Plaintiff admits that she initiated nearly all material communications with Carol Trow, Lucich, and Pike. For instance, Plaintiff claims that she "discovered and challenged" new account bonus discrepancies with Lucich (Compl. at ¶ 79), but does not assert any well-pled fact that Lucich did anything besides merely respond to her allegations. Similarly, Plaintiff alleges that Carol Trow "initiated no contact" with Plaintiff for nearly a year during the relevant period. Compl. at ¶ 143. Likewise, Plaintiff states that Pike "ceased proactive communication with" Plaintiff beginning in September 2024. Compl. at ¶ 149. Plaintiff cannot create jurisdiction where none exists by instigating email communications with the Individual Defendants. *See Zaman*, 152 F. Supp. 3d at 1053 (stating that "communications initiated by Plaintiff, such as Defendant's response to Plaintiff's cease and desist letter, are not relevant and thus cannot support a finding of personal jurisdiction").

### III. The Fiduciary Shield Doctrine Prevents this Court from Exercising Jurisdiction Over Both Lucich and Pike.

Plaintiff's attempts to assert personal jurisdiction over Lucich and Pike all relate to actions taken by both individuals in the scope of their employment with DermaConcepts. This violates the fiduciary shield doctrine under Illinois law, which "denies personal jurisdiction over an individual

9

whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Walls v. VRE Chicago Eleven, LLC*, 344 F. Supp. 3d 932, 953 (N.D. Ill. 2018) (internal citation and quotation omitted). The rationale behind the fiduciary shield doctrine is that if a defendant's conduct in Illinois "was a product of, and was motivated by, his employment situation and not his personal interests . . . it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Id*. (internal citation and quotation omitted). Accordingly, the fiduciary shield doctrine acts as "a limitation on the reach of the Illinois long-arm statute." *Plastic Film Corp. of America, Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1146 (N.D. Ill. 2001). The doctrine has only two exceptions: actions motivated by the personal interest of an individual and actions taken against individuals within an individual employee's discretion. *Id*.; *see also Levin v. Posen Foundation*, 62 F. Supp. 3d 733, 742 (N.D. Ill. 2014) (explaining the "discretionary" exception to the fiduciary shield doctrine by clarifying it "is not enough that an individual exercise discretion rather than merely carry out precise orders mechanically," instead, the exception applies only where a defendant is "on a frolic of his own") (internal citations and quotations omitted and cleaned up). Neither exception applies here.

      Plaintiff does not plead a single allegation in the Complaint to suggest that any action taken by either Lucich or Pike was in any way "discretionary," meaning outside the scope of their employment. Nor does Plaintiff plead that either individual acted out of self-interest. Accordingly, "it would be unfair to assert personal jurisdiction over [Lucich and Pike] when [their] actions were directed by [their] employment situation, and not [their] personal interests." *Walls*, 344 F. Supp. at 954. There is also no allegation that either Lucich or Pike owns any stake in DermaConcepts which would create any direct financial interest in the company. Indeed, neither Lucich nor Pike possesses any ownership interest in the DermaConcepts entity. M. Lucich Decl. at ¶ 4; M. Pike

Decl. at ¶ 4. Thus, to the extent that any allegations in Plaintiff's Complaint are sufficient to establish minimum contacts as to Lucich or Pike, the fiduciary shield doctrine protects both individuals from the exercise of personal jurisdiction under Illinois law. *United Financial Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 895 (N.D. Ill. 2002) (finding fiduciary shield doctrine prevented court from exercising personal jurisdiction where all defendants' contact with forum state "was made in [their] corporate capacity" and where defendants had no "direct financial stake in the company"). For this additional reason, Plaintiff cannot establish personal jurisdiction over either Lucich or Pike, and her Complaint as to both should be dismissed pursuant to Rule 12(b)(2).

**12(b)(6) Motion to Dismiss for Failure to State a Claim**

  **IV. Plaintiff's Complaint Cannot State a Claim against the Individual Defendants.**

  The Individual Defendants incorporate and adopt the arguments asserted in DermaConcepts' motion to dismiss and supporting memorandum regarding the retaliatory discharge (Count V), civil conspiracy (Count VII), and tortious interference (Count VIII) claims in the Complaint. As explained in DermaConcepts' submission, the retaliatory discharge claim is rooted in both an alleged Illinois Human Rights Act violation and a constructive discharge, both of which Illinois courts have repeatedly held cannot sustain a retaliatory discharge claim. The civil conspiracy claim is similarly defective as it asserts the company, its owners, and employees have engaged in the conspiracy, which is a legal impossibility under Illinois law. The tortious interference claim fails to allege any contact with a third party, and thus lacks a fundamental component required to state such a claim. The tortious interference claim is further insufficient as a matter of law in that all statements alleged by Plaintiff were privileged communications sent to Plaintiff's counsel in the context of explaining DermaConcepts' position concerning the

11

enforceability of a contract. Plaintiff's only remaining claim, for IIED (Count VI) against Robert Trow only, is equally incapable of stating a claim under Illinois law.

An IIED claim has three elements: "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress." *McGrath v. Fahey*, 126 Ill.2d 78, 533 N.E.2d 806, 809 (1988) (emphasis in original). Further, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it … It is thus clear that the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (internal quotation marks and citations omitted). "[T]he circumstances surrounding a typical employment dispute usually do not rise to the level of extreme and outrageous conduct." *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997). In fact "[m]ost conduct by an employer that falls short of attempted coercion into a crime or sexual misconduct, even if such conduct is illegal, has fallen short of the 'outrageous' behavior required by caselaw." *Fang v. Vill. of Roselle*, No. 95 C 5175, 1996 WL 386556, at *4 (N.D. Ill. July 5, 1996); *see also Jobe v. Rager*, No. 03–1401, 2006 WL 51180, at *7 (C.D. Ill. Jan. 10, 2006) (collecting cases rejecting IIED claims due to lack of employer coercion into illegal activity or sexual misconduct).

Plaintiff's IIED claim alleges that the following actions of Robert Trow were "extreme and outrageous:" "sen[ding] harassing messages and memes to Ms. SKELDON's personal social media accounts … forc[ing] Ms. SKELDON to travel while severely ill with COVID-19 [in April 2023] … orchestrat[ing] a campaign of professional isolation, completely ceasing communication with Ms. SKELDON after March 2024 … direct[ing] or approv[ing] the systematic denial of Ms. SKELDON's

12

legitimate expense reimbursements … [and] engag[ing] in post-employment surveillance of Ms. SKELDON's LinkedIn profile." *See* Compl. at ¶¶ 400-404. These allegations, even taken as true, do not amount to the level of "extreme and outrageous" conduct necessary to maintain an IIED claim as a matter of law. Indeed, courts in the Northern District of Illinois and Seventh Circuit "have repeatedly dismissed intentional infliction of emotional distress claims" with similar allegations to Plaintiffs. *See Edwards v. Commonwealth Edison & Barbara Stevens*, No. 15C3260, 2015 WL 6445417, at *4 (N.D. Ill. Oct. 23, 2015).

For example, in *Harriston v. Chicago Trib. Co.*, 992 F.2d 697 (7th Cir. 1993), the plaintiff made allegations similar to Plaintiff's here. Specifically the plaintiff in *Harriston* complained of: "being forced out of her management position[;] … being reprimanded for no reason; ... having a major account taken away from her and being given one of the least lucrative sales territories; being excluded from office activities; ... [and] having her telephone calls monitored through the use of an eavesdropping device." *Id*. at 703. The Seventh Circuit ruled that, as a matter of law, these "allegations do not reach the level of extreme and outrageous conduct needed to establish a claim for intentional infliction of emotional distress," and affirmed the district court's dismissal of the IIED claim. *Id.*; *see also McKay v. Town & Country Cadillac, Inc.*, 991 F. Supp. 966, 972 (N.D. Ill. 1997) (dismissing IIED claim where plaintiff alleged defendant-former employer verbally abused plaintiff, reduced plaintiff's pay, searched plaintiff's telephone records for personal phone calls, and erroneously demanded plaintiff reimburse defendant for sums advanced.) Further, courts have repeatedly dismissed IIED claims with allegations of much more severe conduct than that alleged by Plaintiff. *See, e.g., Socorro v. IMI Data Search, Inc.*, No. 02–8120, 2003 WL 1964269, at *5 (N.D. Ill. April 28, 2013) (describing allegations against defendant-former employer as "deplorable" but nevertheless dismissing IIED claim where plaintiff alleged

13

defendant terminated his employment based on erroneous background report, falsely accused plaintiff of falsifying his application, and falsely telling third parties that the employee was fired for lying and had spent six months in jail); *Briggs v. N. Shore Sanitary Dist.*, 914 F. Supp. 245, 252 (N.D. Ill. 1996) (finding "hanging pickaninny doll in [plaintiff's] office, … subject[ing] plaintiff] to racial slurs, … exclu[ding plaintiff] from office social activities, … plac[ing plaintiff] on probation, and … refus[ing] … to train [plaintiff] properly" was not "extreme and outrageous" and dismissing IIED claim in regard to those allegations.)

Plaintiff attempts to overcome the facial inadequacy of her allegations by alleging that Robert Trow "knew that [Plaintiff] was particularly susceptible to emotional distress due to her dedication to her career and financial obligations." *See Compl.* at ¶ 406. Although "courts evaluate whether the defendant is aware that the plaintiff is particularly susceptible to emotional distress," *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024) in analyzing whether conduct is extreme and outrageous, they require more than Plaintiff's generic and universally applicable statement that she was "susceptible to emotional distress due to her dedication to her career and financial obligations." Rather, courts typically require some sort of physical condition that would make a plaintiff peculiarly susceptible for emotional distress. *See Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 607 N.E.2d 201, 212 (1992) (plaintiff peculiarly susceptible because of neurofribromatosis); *Wall v. Pecaro*, 204 Ill. App. 3d 362, 368, 561 N.E.2d 1084, 1088 (1990) (plaintiff peculiarly susceptible because of pregnancy). In contrast, courts have found plaintiffs were not peculiarly susceptible to emotional distress where they were dealing with situations far more severe than "career and financial obligations." *See, e.g.*, *Shamim v. Siemens Industry, Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012) (dismissing IIED claim and observing that "courts in Illinois, often hesitate to find a claim for [IIED] in employment situations because of the concern

14

that if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action") (internal citation and quotation omitted); *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 569 (7th Cir. 1997) (dismissing IIED claim against plaintiff known to have bipolar disorder). The IIED claim should be dismissed.

## CONCLUSION

For the reasons stated above, the Individual Defendants request that this Court dismiss the Complaint in its entirety for lack of personal jurisdiction. In the alternative, the Individuals request that the Court dismiss the retaliatory discharge claim (Count V), the civil conspiracy claim (VII) and the tortious interference claims (Count VIII) against them for the reasons articulated in DermaConcepts's Motion to Dismiss, and the IIED claim (Count VI) against Robert Trow for the reasons stated above, with prejudice.

Dated: June 20, 2025

Respectfully submitted,

ROBERT LEWIS TROW, CAROL SMIRA TROW, MICHAEL LUCICH, and BRITTANY PIKE

By: */s/ Richard R. Winter*
    One of Its Attorneys

Richard R. Winter (#6195210)
William A. Ringhofer (#6339585)
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
richard.winter@hklaw.com
william.ringhofer@hklaw.com